■ In the Matter of DENISE AA., Respondent, v DAVID AA., Appellant. (And Another Related Proceeding.) [654 NYS2d 842] —Cardona, P. J. Appeal from an order of the Family Court of Rensselaer County (Hummel, J.), entered November 3, 1995, which, inter alia, granted petitioner's application, in two proceedings pursuant to Family Court Act article 6, for, inter alia, physical custody of the parties' children.

Petitioner and respondent are married and have two children, Rebecca (born in 1981) and Chelsea (born in 1989). The parties separated in November 1994. Petitioner filed a petition seeking sole custody of the parties' two children and respondent filed a cross petition seeking custody. A temporary order of joint custody awarding physical custody to petitioner was issued in April 1995. The temporary order also set forth certain visitation to respondent. A fact-finding hearing on the petitions commenced on September 15, 1995, at the start of which the parties were able to stipulate to an order of joint custody and requested that Family Court's determination be limited to the issues of primary physical custody of Chelsea and visitation with both children.[1]

Originally the hearing had been scheduled for July 7, 1995; however, Family Court granted an adjournment at the request of respondent's former counsel and scheduled the hearing for the September 15, 1995 date. At the onset of the hearing respondent informed Family Court that he had discharged his former counsel and that he had spoken to a new attorney, but that he was unavailable to participate in the hearing on that date. Accordingly, respondent requested an adjournment of the hearing. Family Court, in light of the fact that the matter had been scheduled for a hearing since at least July 1995, denied respondent's request and respondent proceeded *pro se* on that date and two subsequent hearing dates, namely, September 29, 1995 and October 27, 1995.

The only witnesses testifying at the fact-finding hearing on the various dates were petitioner, respondent's paramour and respondent's therapist, a social worker employed at a private mental health clinic. Although Family Court gave respondent a full opportunity to do so, respondent declined to testify.[2] Consistent with the Law Guardian's recommendation, Family Court ordered, *inter alia*, that the parties have joint legal custody of their two children and that primary physical custody be awarded to petitioner. Respondent appeals.

We affirm. Initially, to the extent respondent argues that Family Court abused its discretion in declining to grant him

1. Respondent stated that Rebecca, with whom he unfortunately had a strained relationship, could choose where she preferred to live.

2. Mindful that respondent was proceeding *pro se*, Family Court several times explained to respondent that he could put information into evidence by simply testifying himself. Further, when respondent stated that he did not want to testify because he felt adequate information was already before the court, Family Court asked him, "Do you understand if you don't testify, and you rest, you won't have any further opportunity to put in proof?", and respondent replied, "Yes."

an adjournment so that he could seek new counsel, we disagree (*see, Matter of Heyer v Heyer*, 112 AD2d 539, 540). The court correctly noted that respondent had ample time to ensure that he was represented by counsel by the first date of the hearing. Respondent also proceeded *pro se* on the later dates of the hearing. Family Court properly warned respondent of the possible pitfalls of *pro se* representation. Respondent was given ample opportunity to present evidence and he participated in the examination of all witnesses.

Turning to the merits, respondent principally argues that Family Court abused its discretion by awarding primary physical custody of Chelsea to petitioner. It is well settled that in determining custody between two parents, the best interest standard governs (*see, Eschbach v Eschbach*, 56 NY2d 167, 171; *Matter of King v King*, 225 AD2d 819, 820, *lv denied* 88 NY2d 806). Many factors must be considered and weighed using this standard and no single factor is dispositive (*see, Eschbach v Eschbach, supra*, at 171; *Matter of King v King, supra*, at 820; *Matter of Belden v Keyser*, 206 AD2d 610, 611). It is important to note that " 'Family Court's factual findings in this regard are traditionally accorded great deference * * * and will be set aside only where they lack a sound and substantial basis in the record' " (*Matter of King v King, supra*, at 981, quoting *Matter of Perry v Perry*, 194 AD2d 837, 837-838).

Here, respondent argues that petitioner is incapable of providing a moral or stable homelife for Chelsea due to petitioner's handling of the discovery that Rebecca was sexually active with her former boyfriend, a boy a year older than Rebecca who she had dated several months prior to the parties' separation and with whom she had stopped dating in August 1995. Petitioner testified that while the teenagers were dating, she allowed Rebecca's boyfriend to sleep on the living room sofa about once a week while Rebecca slept upstairs in her room. Petitioner admitted that she sometimes allowed Rebecca to sleep on a separate couch in the living room when the two teenagers fell asleep while watching television.[3] Although respondent alleges that petitioner encouraged a sexual relationship between the two teenagers, petitioner testified that she told Rebecca that she was too young to be engaging in

___

3. While the record is far from clear as to specific time periods, it appears that some of the incidents involving Rebecca's boyfriend sleeping over occurred before the parties' separation. Petitioner testified that to her knowledge the teenagers did not engage in sexual activity in her household and she only learned of the serious nature of the relationship after Rebecca came to her and asked for assistance in acquiring birth control.

sexual activity, but because she was concerned about Rebecca engaging in unprotected sex she agreed to take her to the gynecologist. Significantly, respondent's own therapist testified that the parent of a sexually active child needs to look into birth control. Although petitioner did not exercise prudent judgment in allowing Rebecca and her boyfriend to occasionally sleep in the same room, upon this record petitioner's handling of the discovery of her teenage daughter's sexual activity did not substantiate that Chelsea would be at risk in the physical custody of petitioner.

Respondent further argues that he should be awarded primary physical custody of Chelsea due to the fact that, since the parties' separation, petitioner has been dating the father of Rebecca's former boyfriend and petitioner testified that she planned on moving into her boyfriend's home at some point with her two daughters. Petitioner admitted that the situation of Rebecca living in the same house with her former boyfriend may be uncomfortable for Rebecca. She indicated that Rebecca and her former boyfriend would not sleep on the same floor of the house. There was insufficient proof to indicate that any stress caused by Rebecca living in the same house as her former boyfriend would be so severe as to traumatize the well-being of either of the parties' children.

The majority of the remaining allegations advanced by respondent involved minor incidents such as petitioner's failure to make Chelsea wear a seatbelt on one occasion and her admission that she is lax about keeping Chelsea's long hair well-groomed (see, e.g., Matter of Ellor v Ellor, 221 AD2d 886, 887). In addition, respondent's claim that petitioner was negligent in not taking Chelsea to the doctor's for a tetanus shot after the child received some minor puncture wounds from a few carpet tacks is belied by petitioner's testimony that the child's pediatrician initially told her that the shots were not necessary.[4] Respondent further criticized petitioner for not bathing Chelsea every day, but petitioner testified that she was under orders from Chelsea's pediatrician to bathe her only twice a week due to the child's eczema skin condition.

Family Court also considered evidence relating to respondent's interaction with his children. With respect to the situation involving Rebecca and her former boyfriend, Family Court specifically mentioned respondent's poor judgment in the critical tone he took in addressing the subject of Rebecca's sexuality and the way respondent hindered Rebecca's attempts to

---

4. Apparently after it was later learned that the child did need a booster shot, respondent took the child to the doctor's office.

seek counseling from a therapist other than the one currently treating respondent. Both Family Court and the Law Guardian also expressed concern over respondent's harassment of petitioner which included an incident on May 12, 1995, when he engaged in a physical altercation with petitioner in front of Chelsea and allegedly smashed the window of petitioner's car right next to where Chelsea was seated.

Under the totality of circumstances presented here and based upon the best interest of the children, we conclude that Family Court did not abuse its discretion in determining that primary physical custody should be awarded to petitioner. It is important in this regard to note the general desirability of keeping siblings together, especially in cases such as this where the record demonstrates that the siblings, who have always lived together, have a close and affectionate relationship (*see, Matter of Scalia v Scalia*, 217 AD2d 780, 781). We cannot say that there is not a sound and substantial basis in this record to support Family Court's determination herein.

Mercure, White, Casey and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.